MURPHY v. NEW YORK PRESS CO., Limited.

(Supreme Court, Appellate Division, First Department. November 7, 1913.)

LIBEL AND SLANDER (§ 6*)—WORDS "LIBELOUS PER SE."

> A newspaper article containing a story of the rescue of plaintiff, an unmarried young woman, from death in a steamship disaster at sea, falsely charging that she and her lover "eloped" or "ran away" from their home in Ireland, boarded the ship en route to New York, and were together up to the time the steamer sank several days thereafter, leaving an unmistakable inference that during all of this period they had not been married, was libelous per se.
>
> [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 3–16; Dec. Dig. § 6.*]

Appeal from Special Term, New York County.

Action by Margaret Murphy against the New York Press Company, Limited. From an order sustaining a demurrer to the com-

plaint, plaintiff appeals. Reversed, and plaintiff's motion for judgment granted, with leave to defendant to withdraw its demurrer and answer within 20 days on payment of costs.

The following is the article alleged to be libelous:

New York Press, April 29, 1912.

Gave his Life to Save that of his Sweetheart.

Young Irishman Fought His Way to Titanic's Lifeboat.

They Eloped from Ireland.

Girl Tells of Heroism Displayed by the Man she had Selected for her Mate.

In the Mission of Our Lady of the Rosary No. 7 State Street, yesterday afternoon where several young women survivors of the Titanic were being entertained with music and refreshment in an effort to lighten their hearts and divert their minds from recollections of their dreadful experiences when the big ship went down, there was told by Margaret Murphy, nineteen years old, a bright and prepossessing girl, the story of love, courage, and self-sacrifice that ranks with the foremost deeds of heroism of the many recorded in the wreck. Deeply religious, and firm in her belief that her sorrow is a visitation earned because she ran away with her sweetheart from their home in Fostra, County Longford, the young woman grieves for the loss of one who gallantly died after fighting desperately to carry her to a boat through the struggling passengers in the steerage. After leading her safely to the boat deck, the young man, John Kiernan, unstrapped the life belt he wore and tied it on the girl. He reached the deck in time to catch a boat that just was being sent away. There was room for one more and into it he forced her despite her protests. There was little time in which to say good-by but in the fleeting moments the youth caught the girl in his arms, pressed his lips to hers, and half flung her into the boat as it swung outward from the davits.

The hum of nervous voices, the rumbling of the boat falls in the blocks as the boat was lowered away, drowned the parting message of the youth as he leaned over the rail, his form silhouetted in the starlight night, gazing at the upturned face of the girl he loved, as the distance between them gradually increased. In the confusion none but the girl in the boat heard the young man shout:

"Don't worry, I'll be saved."

But he died with those who unselfishly thought of the safety of others.

The boy and girl were playmates in childhood in their native town. The girl in her humble state was above the youth socially for he was employed in her father's grocery store. They loved each other and agreed to elope to America. They little dreamed of the tragic fate awaiting one of them. When the ship was stabbed fatally by the hidden spur of the iceberg they were with hundreds of others in the steerage on the fifth deck of the liner. Those who were able grabbed life belts. The young man got one, his sweetheart did not. Lest they should be separated in the crowd, Kiernan held the girl and fought his way with her to the boat deck.

"One of us must go," he told her quietly, "you haven't a life belt, I have."

Quickly he took the life preserver from his body and wrapped it around his sweetheart. She resisted and hampered his work, clinging to him and saying she would not go without him. By force he put her in the boat.

Miss Murphy told dramatically how after the boat left the ship and began to leak she and other young women, among them the Misses Agnes and Alice McCoy, set fire to their hats to warm their feet. The boat was half filled with water when they were picked up. The warmth of their blazing headgear probably saved them from being frostbitten, she said.

Father Michael J. Henry, in charge of the mission distributed among the thirty young women $25 each that had been collected from Irish societies by Michael McDermott.

Plaintiff was a young woman of 24 years, and had for several years been a resident of New York, and was returning from a short visit to her family when the Titanic was lost.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Charles J. Kelaher, of New York City, for appellant.

Philip Carpenter, of New York City, for respondent.

PER CURIAM. We think the publication alleged in the complaint was libelous per se, and that the court should have granted the plaintiff's motion for judgment.

The order appealed from is therefore reversed, with $10 costs and disbursements, and the plaintiff's motion for judgment granted, with $10 costs, with leave to the defendant to withdraw demurrer and to answer within 20 days on payment of costs in this court and at Special Term.

---

(158 App. Div. 768.)

### BARLOW v. LEHIGH VALLEY R. CO.

(Supreme Court, Appellate Division, Third Department.   November 12, 1913.)

COMMERCE (§ 27*)—"INTERSTATE COMMERCE"—WHAT CONSTITUTES—RAILROADS.

The engineer of a switch engine, who was switching coal cars containing an interstate shipment of coal so that they could be dumped into the railroad company's bunkers from which the railroad's locomotives, both those engaged in interstate and those in intrastate commerce, would coal, is engaged in "interstate commerce" within the purview of the federal Employers' Liability Act, April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322).

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*

For other definitions, see Words and Phrases, vol. 4, pp. 3724–3731.]

Appeal from Trial Term, Cortland County.